**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Traditions Health LLC, | No. CV-23-01876-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Lisa Ann Paulson, et al., | |
| Defendants. | |

Pending before the Court is Traditions Health LLC's ("Traditions") Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum of Points and Authorities (Doc. 2).  Defendant Lisa Paulson ("Paulson") filed a response (Doc. 13), Defendant Thema Management Company, LLC ("Thema") filed a response (Doc. 17), and a hearing was held on September 15, 2023.  Supplemental briefing on the issue of Plaintiff's capacity to sue was ordered and that was received on September 19, 2023 (Doc. 16).  The court has considered all the pleadings, arguments of counsel, and relevant case law and will deny Traditions Motion for the reasons discussed below.

## I.    BACKGROUND

Traditions is a national company that provides home health and hospice services. (Doc. 2 at 3.)  Paulson was previously employed with Traditions as an account executive and had worked for Homestead, an acquisition of the company since 2019.  (Doc. 1 at 4–5.)  In this position she was exposed to certain company information including client lists, service standards, compensation plans, and business plans.  (Doc. 1 at 11.)  Before

beginning work at Homestead, Paulson was required to sign the "Confidentiality and Restrictive Covenant Agreement ("the Homestead Agreement"). (*Id.* at 5.) The Homestead Agreement's non-compete specified:

> During [Paulson's] employment with [Homestead], and for a period of twelve (12) months after termination of his or her employment with [Homestead], [Paulson] agrees not to, either directly or by assisting others, whether as an employee, agent, contractor, sole proprietor, partner, joint venture, or the like, and in the same or similar capacity that [Paulson] performed services on behalf of [Homestead], compete with [Homestead] by performing Corporation Services. [Paulson's] undertaking not to compete with [Homestead] under this provision is limited to business activities within those counties within which [Paulson] is working for [Homestead] during the last one hundred eighty (180) days of employment [Paulson's] employment with [Homestead] (the "Restricted Territory"), which [Paulson] agrees [and] represents a reasonable geographic measure of the area within which he or she shall not compete with [Homestead]

(*Id.*) This agreement included a provision that it would be governed under Georgia law. (*Id.*) After Traditions acquired Homestead, Paulson was again required to sign various restrictive covenants, including non-disclosure and non-solicitation covenants ("The Traditions Agreement"). (*Id.* at 6.) The non-disclosure clause outlined, in relevant part, that:

> During [Paulson's] employment with [Traditions], [Paulson] understands that [Paulson] will learn and have access to proprietary information, business contacts and other knowledge that would be detrimental to [Traditions] if provided to a competitor. [Paulson] further understands that the methods employed in [Traditions'] business are such as would place him/her in a close business and personal relationship with [Traditions'] clients, suppliers and vendors, and that [Paulson] will become aware of confidential business, professional and/or proprietary information concerning [Traditions'] business with its customers. [Paulson] further acknowledges and agrees that such business relationships and information about customers, as well as [Traditions'] relationships with its employees, are legitimate business interests and trade secrets of [Traditions], and that the loss of customers or employees through misappropriation of such relationships and information would cause [Traditions] great and irreparable harm. [Paulson] therefore understands that [Traditions] has a valid interest in providing certain limitations on [Paulson's]activities outside the scope of [Paulson's] employment in order to protect the competitive interest of [Traditions]

(*Id.* at 6–7.) The non-solicitation covenants outlined that Paulson would not (1) solicit

Traditions employees, or (2) solicit certain clients, patients, or referral sources for one year after leaving the company.  (*Id.* at 7.)  Paulson also signed certain provisions relating to the disclosure of confidential information including that:

> Notwithstanding any provision herein to the contrary, or any other agreement or arrangement between Employee and the Company.  Employee shall at all times be prohibited from disclosing Confidential Information to (i) any person not directly affiliated with the Company (except for persons who, in the normal scope of an indirect affiliation with the Company have access to, and the authority to access the Confidential information), (ii) any persons or entities in competition with the Company (collectively, "Prohibited Persons").

(*Id.* at 9.)  The Traditions Agreement did not include a non-compete clause.  (*Id.*)

In July 2023, Paulson left Traditions and began similar employment at Thema, allegedly while still receiving her final paycheck from Traditions.  (*Id.* at 11.)  Thema is a competitor of Traditions, also providing services in the home health and hospice industry.  (*Id.* at 12.)

Now, Traditions brings a breach of contract claim against Paulson, a tortious interference with contract claim against Thema, and claims for trade secret misappropriation against both Paulson and Thema.  (*Id.* at 15–16.)  Alleging irreparable harm, Traditions asks this Court to grant a temporary restraining order restricting Paulson and Thema from (1) soliciting Traditions clients, patients, restricted customers, and referral sources; (2) misappropriating confidential information and trade secrets and; (3) continuing Paulson's current employment with Thema. (Doc. 2 at 1–2.)

## II.    LEGAL STANDARD

Under Rule 65 of the Federal Rules of Civil Procedure, a party may seek injunctive relief if it believes it will suffer irreparable harm during the pendency of an action.  Fed. R. Civ. P. 65.  The analysis for granting a temporary restraining order ("TRO") is "substantially identical" to that for a preliminary injunction.  *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001); *Cochran v. Rollins*, No. CV07-1714-PHX-MHMJRI, 2008 WL 3891578, at *1 (D. Ariz. Aug. 20, 2008). "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be

granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis omitted)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.").

A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tip in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this "serious questions" variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

## III.   DISCUSSION

### A. Likelihood of Success on the Merits

Traditions' requested TRO stems from their claims for breach of contract, tortious interference with contract, violation of defendant trade secrets act, and violation of Arizona uniform trade secrets act. These claims are based on the non-compete, non-solicitation, and confidentiality agreements. Defendants argue those agreements are not enforceable.

Arizona law provides that:

A restrictive covenant is reasonable and enforceable when it protects some legitimate interest of the employer beyond the mere interest in protecting itself from competition such as preventing competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment.

*Bed Mart, Inc. v. Kelley*, 45 P.3d 1219, 1221 (Ariz. Ct. App. 2002) (cleaned up). Put

differently, "[n]on-compete and non-solicitation restrictions are enforceable if they are 'no broader than necessary to protect the employer's legitimate business interest.'" *Orca Commc'ns Unlimited, LLC v. Noder*, 314 P.3d 89, 95 (Ariz. Ct. App. 2013), *decision aff'd and ordered depublished on other ground*, 337 P.3d 545 (2014) (quoting *Hilb, Rogal & Hamilton Co. of Arizona v. McKinney*, 946 P.2d 464, 467 (Ariz. Ct. App. 1997)).

Thus, "to be enforceable, the covenant must be reasonable with respect to its duration, its geographic scope, and the range of employee's activities affected." *Unisource Worldwide, Inc. v. Swope*, 964 F. Supp. 2d 1050, 1064 (D. Ariz. 2013). Whether a restrictive covenant is reasonable is a question of law. *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 366 (1999). "The burden is on the party wishing to enforce the covenant to demonstrate that the restraint is no greater than necessary to protect the employer's legitimate interest, and that such interest is not outweighed by the hardship to the employee and the likely injury to the public." *Valley Med. Specialists v. Farber*, 982 P.2d 1277, 1286 (Ariz. 1999). Moreover, restrictive covenants "are strictly construed against the employer." *Amex Distrib. Co., Inc. v. Mascari*, 724 P.2d 596, 600 (Ariz. Ct. App. 1986).

### i. Non-Compete

#### a. Choice of Law

The parties dispute which law applies to the enforceability of the non-compete agreement. Traditions argues that Georgia law applies because of the agreement's choice of law provision. Paulson argues that Arizona law should apply. "[F]ederal courts sitting in diversity must apply the forum state's choice-of-law rules to determine the controlling substantive law." *R & L Ltd. Invs., Inc. v. Cabot Inv. Props., LLC*, 729 F. Supp. 2d 1110, 1113 (D. Ariz. 2010). The Court will thus apply Arizona's choice of law rules to determine the parties' substantive disputes. Arizona follows the Restatement (Second) of Conflict of Laws § 187 which states:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the

transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2) (1988)). "When the parties choose the law of a particular state to govern their contractual relationship and the chosen law *has some nexus* with the parties or the contract, that law will generally be applied." *Effio v. FedEx Ground Package*, No. cv-08-1522-PHX-ROS, 2009 WL 775408, at *1 (D. Ariz. Mar. 20, 2009) (quoting *Nanini v. Nanini*, 802 P.2d 438, 441 (Ariz. Ct. App. 1990)) (emphasis added). In this case, Georgia has no interest in this dispute at all. Traditions is a citizen of Delaware, Paulson lives and works in Arizona, and Thema is a citizen of Arizona. (Doc. 1 at 1–2.) Additionally, Georgia's more lenient standard in enforcing restrictive covenants in employment situations is contrary to Arizona public policy which applies a much more restrictive standard. Therefore, the Court finds that Arizona law will govern.

### b. Non-Compete

Here, the non-compete provision would prohibit Paulson from working in her current job for a period of twelve months. Paulson argues the non-compete is geographically and temporally overbroad. Geographically, the non-compete would prohibit Paulson from working anywhere in Maricopa County which is 9.224 square miles and includes 4.5 million residents. Paulson is the sole earner for her family as her husband is disabled. She argues that if the geographic restriction were to apply, she would have to relocate and that would be a hardship. Traditions initial arguments relied on Georgia law, so are largely inapplicable here. However, at oral argument, Traditions continued to maintain those arguments and provided no additional arguments, under Arizona law, for why the geographic limitation should be enforced. The Court agrees with Paulson that given the size and population of Maricopa County, the non-compete is geographically overbroad. *See Unisource*, 964 F. Supp. 2d at 1066 (finding a non-compete covering

1  Maricopa County unenforceable).

2      Paulson also argues the agreement is temporally overbroad because she only worked

3  for Traditions for fifteen months.  Thus, she argues, there is no reason why Traditions

4  would need a full year to replace her.  To support the one-year period, Traditions, again,

5  relies on Georgia law dictating that says one year is presumptively reasonable.  Ga. Code.

6  Ann. § 13-8-57(b) ("[A] court shall presume to be reasonable in time any restraint two

7  years or less in duration . . . .").  However, no such presumption exists under Arizona Law

8  and *the Court* must decide whether the restriction is reasonable.  Here, despite having the

9  burden of showing that a restraint is no greater than necessary, Traditions has given no

10  explanation for why one year should be considered reasonable.  Given the lack of

11  arguments otherwise, and the likelihood of hardship for Paulson should the restriction be

12  enforced, the Court cannot find that the one year non-compete is reasonable.  Therefore,

13  the Court finds that Traditions does not have a likelihood of success on a breach of contract

14  claim related to the non-compete provision.

15      **ii.    Non-solicitation/Confidentiality**

16      Before discussing the enforceability of these restrictive covenants, the Court will

17  first address Paulson's argument that she did not agree to them.  After Traditions bought

18  Homestead, all employees were required to accept the non-solicitation and confidentiality

19  provisions to continue their employment with Traditions.   Paulson used an online

20  onboarding system, Workday.  Through this system, Paulson signed in with her unique

21  login and password, which was under her sole control.  After reviewing the documents, she

22  electronically signed them by affirmatively checking the box that says, "I have received

23  the Non-Disclosure, Innovation Agreement, and Non-Solicitation Agreement, understand

24  my obligations under the agreement, and agree to comply with the terms."  Workday

25  provided a comment box for Paulson to write any concerns she had about the agreement,

26  but she left it blank.  Paulson provided an affidavit in response to the TRO motion saying

27  that she did not intend to sign the agreement, which makes it unenforceable under Arizona

28  law, specifically Ariz. Rev. Stat. Ann. § 44-7002.  The Court disagrees.  Under the statute,

"Electronic signature" is defined as "an electronic sound, symbol or process that is attached to or logically associated with a record and that is executed or adopted by an individual with the intent to sign the record." *Id.* Although Paulson's affidavit says that she refused to sign the agreement, the electronic evidence is clear that she *did* sign it. Signing was an affirmative step on her part; therefore the Court finds that Paulson signed the agreement.

Traditions argues that the non-solicitation provision is enforceable because it is less restrictive than a non-compete and the confidentiality agreement is enforceable because it restricts the use of non-public information and customer lists. Although an employer "has a protectable interest in customer relationships when an employee leaves, an employer has no protectable interest in persons or entities as customers when the employer has no business ties to them." *Orca Unlimited, LLC v. Noder*, 314 P.3d 89, 96 (Ariz. Ct. App. 2013), *decision aff'd and ordered depublished in part*, 337 P.3d 545 (Ariz. 2014). In this case, the non-solicitation provision includes not only present customers but "potential customers" with whom the employee either directly or indirectly called on in the last two years of employment. This Court has previously held that similar provisions are unenforceable. *See InfoArmor Inc. v. Ballard*, No. CV-21-01844-PHX-SMB, 2022 WL 394735, at *3 (D. Ariz. Jan. 26, 2022) ("[T]his language is too broad—as it encompasses potential customers—and it is simultaneously too vague because it applies to potential customers who were solicited by other . . . employees working in combination with [the named employee]."). The Court therefore finds the non-solicitation of customers provision unenforceable.

As to the Confidentiality provisions, other than re-arguing that she did not sign the agreement, Paulson makes no argument as to why they should not be enforced. Given that the Court rejected this argument above, it finds that there may be some likelihood of success in arguing that the Confidentiality provisions are enforceable. However, Traditions has not yet showed any *violation* of these provisions by Paulson and/or Thema. Mere possession of some confidential information does not equal disclosure of the same. Therefore, just because Paulson possessed some confidential information, that does not

1   mean that she disclosed this information or that Thema used it in violation of the

2   confidentiality provisions.

3        The Court finds that Traditions has not shown a likelihood of success on a claim for

4   violation of the non-solicitation and/or Confidentiality provisions,

5        **iii.    Tortious Interference with Contract**

6        To establish a tortious interference claim, a claimant must show: (1) a valid contract

7   or business expectancy existed; (2) the interferer had knowledge of such business contracts

8   or expectancy; (3) there was intentional interference causing a breach of the contract or

9   business expectancy; and (4) resultant damages.  *Neonatology Assocs. v. Phx. Perinatal*

10  *Assocs. Inc.*, 164 P.3d 691, 693 (Ariz. Ct. App. 2007).  This claim relates to Traditions

11  claim that Thema engaged in tortious interference with contract by employing Paulson.

12  However, as discussed above, the Court finds no valid contractual relationship as to the

13  non-compete or non-solicitation agreements.  The Court also found above that there is no

14  evidence that any confidential information was used by Paulson or Thema.  Therefore,

15  Traditions has not shown a likelihood of success on this claim.

16       **iv.    Trade Secrets**

17       It is unlawful to misappropriate trade secrets under both the federal Defend Trade

18  Secrets Act ("DTSA") and the Arizona Uniform Trade Secrets Act ("AUTSA").  *See* 28

19  U.S.C. § 1832; Ariz. Rev. Stat. Ann. § 44-401.  Misappropriation of a trade secret is

20  analyzed similarly under both federal and Arizona law.  *See ReBath LLC v. HD Sols. LLC*,

21  No. CV-19-04873-PHX-JJT, 2020 WL 7000071 (D. Ariz. Sept. 18, 2020).  To state a

22  colorable claim for misappropriation, Plaintiff must allege that (1) it owns a trade secret,

23  (2) that was misappropriated by Defendants, and (3) this caused damages.  *Gordon Grado*

24  *M.D., Inc. v. Phoenix Cancer & Blood Disorder Treatment Inst. PLLC*, 603 F. Supp. 3d

25  799, 809 (D. Ariz. 2022); 18 U.S.C. § 1839(5).  Before moving into the rest of the analysis,

26  the claimant must first prove a legally protectable trade secret exists.  *Calisi v. Unified Fin.*

27  *Servs., LLC*, 302 P.3d 628, 631 (Ariz. Ct. App. 2013)

28       The DTSA defines "trade secret" as:

all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if…the owner thereof has taken reasonable measures to keep such information secret; and… the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information . . .

18 U.S.C. § 1839(3). The AUTSA defines "trade secret" as:

[I]nformation, including a formula, pattern, compilation, program, device, method, technique or process, that both:

(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ariz. Rev. Stat. Ann. § 44-401(4). Once claimant has established a trade secret exists, they must show Defendant has misappropriated that secret. The DTSA defines misappropriation, in part, as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent . . ." by a person with some level of duty restricting disclosure. 18 U.S.C. § 1839(5). The AUTSA defines misappropriation as either of the following:

(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who either:

(i)    Used improper means to acquire knowledge of the trade secret.

(ii)    At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

(iii)   Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Ariz. Rev. Stat. Ann. § 44-401(2)(a), (b)(i)–(iii).

Here, Traditions has evidence that Paulson acquired trade secrets when she emailed the information to her personal email before she left work at Traditions.  Paulson sent herself patient lists, client lists, Tradition's marketing guidelines, Tradition's operating procedure, and a new account list for December through April, which the Court has reviewed in-camera.  However, as of the hearing date, Traditions was not able to present information that Paulson had disclosed that information.  Instead, they presented evidence that Thema had acquired seven patients that were previously patients with Traditions.  Because Traditions was not able identify which, if any, of those patients were on the wrongly acquired list—and the exhibits demonstrating the transfer of the patients have the names redacted—the Court was unable to confirm if any of the trade secret information was used or disclosed.  Therefore, the Court finds Traditions has not shown a likelihood of success on the trade secrets claims.

**B.  Irreparable Harm**

Irreparable harm is harm for which there is no adequate remedy at law, such as money damages.  *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).  "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance.  Demonstrating irreparable harm is not an easy burden to fulfill."  *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (internal quotation marks and citation omitted); *see also Dalkita, Inc. v. Distilling Craft, LLC*, No. 18-cv-01398-PAB-SKC, 2018 WL 6655628 (D. Col. Dec. 19, 2018).  Here, Traditions has not shown that it will suffer irreparable harm.  Rather, the harm they allege is from the loss of patients and referral sources.  These are both damages that can be addressed with an award of money damages.

**C.  Balance of Equities**

"In each case, a court must balance the competing claims of injury and must

consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987); *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) ("In assessing whether the plaintiffs have met this burden, the district court has a 'duty . . . to balance the interests of all parties and weigh the damage to each.'" (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir.1980))).   Here, Paulson has stated via affidavit that enforcement of the restrictive covenants would cause financial hardship to herself and her family.  Alternatively, as Paulson points out, Traditions is a large, multi-state hospice and home health service company that is better positioned to absorb a loss until a trial can be held.  The balance of equities weighs against granting the TRO.

**D. Public Interest**

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)) (internal quotations omitted).  It is true that "[c]ourts have held that the public interest is served by protecting a company's right to proprietary information, business operations, and contractual rights," and that "enforcing these covenants is consistent with the public policy of protecting a company's interest in its customer base from unfair competition." *Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 983 (D. Ariz. 2006).  However, it is also true that "Arizona law does not look kindly upon restrictive covenants." *Unisource*, 964 F. Supp. 2d at 1063.  Indeed, in Arizona, "[r]estrictive covenants that tend to prevent an employee from pursuing a similar vocation after termination of employment" are especially disfavored. *GlobalTranz Enters. Inc. v. Murphy*, No. CV-18-04819-PHX-ROS, 2021 WL 1163086, at *4 (D. Ariz. 2021) (quoting *Bryceland v. Northey*, 772 P.2d 36, 39 (Ariz. Ct. App. 1989)); *see also Unisource*, 964 F. Supp. 2d at 1063.

Furthermore, given that Traditions has not established irreparable harm, the public interest does not favor a TRO. *See Super Chefs, Inc. v. Second Bit Foods, Inc.*, No. 15-CV-00525-SJOFFMx, 2015 WL 12914441, at *5 (C.D. Cal. June 11, 2015) ("[G]iven that

1   Plaintiff has not shown irreparable harm, the Court finds that a preliminary injunction has

2   not been shown to be in the public interest."); *Sunbelt Rentals, Inc. v. Victor*, No. 13-CV-

3   4240 SBA, 2014 WL 492364, at \*11 (N.D. Cal. Feb. 5, 2014) (finding that "the public

4   interest will not be served by entering an injunction to prevent conduct which [the plaintiff]

5   has not shown has or is likely to occur").

6       This factor, too, weighs against granting the TRO.

7   **IV.   CONCLUSION**

8       Accordingly,

9       **IT IS ORDERED denying** Traditions Health LLC's Motion for Temporary

10  Restraining Order (Doc. 2).

11      **IT IS FURTHER ORDERED** that the parties discuss scheduling and whether the

12  hearing on the preliminary injunction should be combined with a trial on the merits.  The

13  parties shall submit an agreed upon scheduling proposal or, if no agreement is reached, a

14  joint statement that includes each parties' proposal by no later than **October 6, 2023**.

15      Dated this 27th day of September, 2023.

16

17

18  _____
    Honorable Susan M. Brnovich
19  United States District Judge

20

21

22

23

24

25

26

27

28